ANDRÉS ARANA, Petitioner and Appellee, v. INSULAR RACING COMMISSION, Respondent and Appellant.

No. 3833.   Argued May 19, 1926.—Decided July 14, 1926.

*Leopoldo Feliú* for the appellee.   *Hon. George C. Butte, Attorney General,* and *F. G. Pérez Almiroty* for the appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The Insular Racing Commission appeals from a judg-

ment based on the following statement, of the case and opinion filed by the district judge:

"This is a petition for certiorari presented by Andrés Arana against the Insular Racing Commission to review a ruling entered by the respondent on November 2, 1925, ordering the expulsion of a race horse named Metrallita, belonging to petitioner, and its elimination from the studbook, on the ground that in a race held on October 12, 1925, at Las Casas Racing Park (a hippodrome operated in San Juan) and in which said animal took part, the jockey who was riding it made use of a dry electric battery, so as to excite said horse.

"The law authorizing this writ is No. 21, approved on June 2, 1925, and went into effect ninety days after its approval. Section 21 provides that, at the instance of a prejudiced party, district courts shall have jurisdiction:

"'(a) To annul or review any legislative or administrative act of the Insular Racing Commission or of any of its officials or employees detrimental to the constitutional rights of the complainant or in conflict with the Organic Act or the laws of Porto Rico, by means of certiorari proceedings.'

"Petitioner, as owner of the expelled horse, is a prejudiced party and has the right to institute this proceeding. He alleges that the ruling of November 2, 1925, is null and void for the following reasons:

"'1. Respondent never had jurisdiction to make said ruling;

"'(a) Because petitioner was served with no previous notice of the proceeding or investigation made by respondent with reference to the aforesaid horse or to petitioner;

"'(b) Because petitioner was given no opportunity to appear and to be heard either before or after the adoption of such ruling, in regard thereto or in connection with any proceeding or investigation in which petitioner or his horse was involved;

"'(c). Because, when Act No. 86 of August 11, 1923, was repealed by Act No. 21 of June 2, 1925, no provision was made for the continuation of the registration of race horses effected under the provisions of. the law so repealed or of any other previous law;

"'2. For the reasons stated in the preceding subdivisions said ruling violates the provisions of section 4, paragraph 4, and section 12 of said Act of June 2, 1925, as well as paragraphs 1 and 9 of section 2 of the Organic Act of Porto Rico.

" '3. Respondent has no power under the above-mentioned Act No. 21 of June 2, 1925, to cancel the registration of petitioner's horse nor to order its expulsion as a race horse from the hippodromes of Porto Rico.

" '4. Respondent does not have, nor did it have on said date, power to impose any penalty for the use of any stimulant on race horses, according to section 35 of said Act No. 21 of June 2, 1925, nor under any other section or provision of such Act.

" '5. Respondent adopted said ruling without any evidence whatsoever tending to show that any person made use of said dry electric battery on said animal while it was running in any race in any hippodrome of Porto Rico.'

"During the hearing of the writ of certiorari and as an answer or return, the respondent Commission offered in evidence certificates issued by the secretary with the seal of the Commission, of the registration, in the studbook for native horses, of Metrallita, a halfbreed, as of July 20, 1925, in the name of Fernando Castro, a horse owner, of a sale on July 28, 1925, to Andrés Arana, petitioner in this case; of the record in the case entitled *In re* Fernández Castro, horse owner; and of that in the case entitled *In re* Julián de la Cruz, jockey. Both records refer to the finding by the weigher, José Casellas, at the races held on Monday October 12, 1925, of a dry electric battery in the valise of jockey Julián de la Cruz.

"From said records, in so far as pertinent to this case, it appears that the jury of the hippodrome having been informed after the fifth race of those held on October 12, 1925, of what occurred as to the horse Metrallita, submitted the case to the Insular Racing Commission for its consideration, forwarding the battery to which reference has been made; that on October 13, 1925, the Commission decided to make an investigation of the facts complained of, and summoned Fernando Castro, a horse owner, and the jockey Julián de la Cruz to appear on the 19th of the same month at 8 p. m. to show cause why they should not be punished because of the facts reported. The Commission also decided to suspend Jockey Julián de la Cruz and the horses Metrallita and El Nene from taking part in the races until further order from the Commission; that Luis Arana, on October 14, 1925, as agent of Andrés Arana, petitioner herein (who then was in the United States), requested the Commission to grant him a hearing in order to discuss the matter with reference to some verbal information given to him by the entry clerk to the effect that the horses El Nene and Metrallita, belonging to his

principal, could not be admitted for registration; that during a meeting held on October 15, 1925, the Commission decided to reply to petitioner Luis Arana that the case being under investigation, he could appear before the Commission, and ordered that he be officially summoned to appear on Monday the 19th at 8 p. m., when said investigation was to begin, so as to determine the facts that had given rise to the temporary expulsion of the horses above referred to; that on October 15, 1925, pursuant to such order, the secretary-auditor addressed a communication to Luis Arana summoning him for the investigation.

"From the stenographic record of the investigations held on October 19 and 20, 1925, it also appears that the case first called for investigation was that of Jockey Julián de la Cruz, who appeared at the hearing in person and by his attorney Gustavo Jiménez Sicardó; that the latter stated at said hearing that he understood that the hearing of the case against Arana, whom he also represented, with regard to the horses, El Nene and Metrallita, had also been set for that same date, and requested that this case be heard first, which petition the Commission denied; that after the case against Julián de la Cruz was investigated, the Commission, on the 19th, considered the case as ended, and then on the 20th proceeded with the investigation against Fernando Castro, a horse owner, who appeared in person and by his attorney Gustavo Jiménez Sicardó. After the investigation came to an end the case was taken under advisement as regards said Fernando Castro.

"On November 2, 1925, the respondent Commission decided said cases against Julián de la Cruz and Fernando Castro, in a single decision, as follows: 

" ' (a) That the license issued in favor of Jockey Julián de la Cruz, to serve in the hippodromes of Porto Rico, be and is hereby definitely canceled.

" ' (b) To exempt Fernando Castro from all guilt and responsibility for want of evidence in the investigation.

" ' (c) To exonerate the horse known as El Nene, and

" ' (d) To expel the horse Metrallita, striking its name from the studbook.'

"This ruling was adopted unanimously except as to the last particular referring to the expulsion of the horse Metrallita and the elimination of its name from the studbook, for commissioners Díaz Collazo and Abril voted against it. Díaz Collazo explained his vote, saying, among other things, that the punishment imposed was not

prejudicial to the horse but to Arana, who was absent from Porto Rico and had not been heard by the Commission. Commissioner Martínez Dávila stated then, upon explaining his vote, that the jockey was an agent of Arana and that the principal should be held responsible for the acts of his agent.

"Notice of said ruling was then given to petitioner Arana by means of the following communication:

" 'November 3, 1925.—Mr. Andrés Arana, San Juan, P.R.— Sir: For your information and concern I am enclosing copy of the ruling adopted by the Insular Racing Commission of the 2nd inst., ordering the expulsion of the horse Metrallita (which belongs to you) and eliminating its name from the studbook.—Very truly yours, (sgd.) J. Peña Reyes, Secretary-Auditor.'

"From the documents sent by the defendant Commission it clearly appears that Andrés Arana, owner of the horse Metrallita, was not summoned in due form, as were Julián de la Cruz and Fernando Castro, nor was any investigation made as to him; for although during the hearing of the case against Julián de la Cruz, attorney Gustavo Jiménez Sicardó stated that he also represented Arana and requested that the case of the latter be called first, this was not done, nor was any investigation made as to him, and he was at the time in the United States and, therefore, as Díaz Collazo states, he was not heard in any form whatsoever.

"The above-mentioned law creating the Insular Racing Commission provides in section 4 that said Commission shall 'as far as possible . . . . follow, in its investigations and proceedings, the procedure established by law for the conduct and dispatch of business in the courts of justice.' The members of the Commission are empowered by section 6 to administer oaths in all cases or matters in connection with the enforcement of the law and its regulations; and it provides in section 12 that only 'for just cause and after hearing the party and granting an opportunity for defense can the Commission temporarily suspend or revoke the license of any race track, horse owner, jockey or stableman.'

"The expulsion of the horse Metrallita and its elimination from the studbook amounts to a punishment of the owner and not of the animal, as Commissioner Díaz Collazo well stated, and it seems to this court that the Commission should have given due notice to petitioner and granted him a proper hearing before imposing the penalty of the expulsion of his horse and its elimination from the studbook. Of course, it is not necessary that the notice be given

with all the requisites that ordinarily should be followed in a criminal proceeding, nor that all the formalities of a trial be observed; but —and this is feasible—a reasonable notice should be given specifying the omissions or violations charged, and a reasonable opportunity for defense be granted. The Commission gave notice and a hearing to Julián de la Cruz and Fernando Castro, as the record of the two cases shows, and there was nothing to prevent the Commission from following the same procedure as to Andrés Arana.

"See Belaval v. Todd, 22 P.R.R. 590; Cintrón v. Berríos, 24 P.R.R. 673, and Lavergne v. Insular Police Commission, 27 P.R.R. 758, which cases discuss what is meant by the phrase 'for just cause and after hearing the party and granting an opportunity for defense.'

"FOR THE REASONS SET FORTH, the petition of certiorari is sustained and, consequently, the ruling of the Insular Racing Commission of November 2, 1925, and particularly paragraph (d) thereof with reference to the expulsion of the horse Metrallita, and its elimination from the studbook, is hereby annulled, without special award of costs. Let judgment be entered and notice hereof be given."

For the purposes of this opinion it may be conceded that Arana had sufficient notice of the date on which the investigation was to begin, but we agree with the court below that said owner was not granted a reasonable opportunity for defense. Nor can we agree with appellant that neither a notice nor a hearing was necessary.

At the beginning of the jockey's trial the following incident occurred:

"Jiménez Sicardó: I understand the case against Julián de la Cruz is set for this evening. I also understand that the case against Arana with reference to the horses Metrallita and El Nene has been set for tonight. If this be so, I request that the Commission, before taking up the case against Julián de la Cruz, reverse the order of the proceeding and hear first the case of the two horses belonging to Arana, whom I also represent, because I think that in this way we may shorten the investigation.

"Díaz Collazo: The Commission has already considered this matter and wants to follow this plan, that is, hear first the case of Jockey Julián de la Cruz.

"Martínez Dávila: I understand that the matter of the horses is a consequence of that of the jockey.

"Jiménez Sicardó: But if I can convince the gentlemen of the Commission, I think that in this way the investigation will be shortened.

"Díaz Collazo: The Commission has already decided to the contrary.

"Jiménez Sicardó: Well, if it has been decided by the Commission, then it is all right."

Counsel for Arana made it perfectly clear that he understood that the case against Arana or against his horses would be heard and conducted as a distinct and separate proceeding, either before or after the case of the jockey. Apparently the Commission acquiesced in the suggestion of a separate trial, although it insisted upon proceeding with the cases in the order already determined. The statement by Díaz Collazo that the Commission had already considered the matter and wished to try the case of the jockey first, made in response to the request that the case against Arana or his horses be first heard, clearly indicated that the case last mentioned was to be called later.

The opinion expressed by Martínez was not necessarily incompatible with the course contemplated by counsel and the Commission.

The Castro case, like the one now before us, although quite similar to that of the jockey, turned upon different circumstances. At the outset it was agreed that the evidence adduced in the case of the jockey would constitute the case against Castro, but Castro was then permitted to introduce his evidence, and was exonerated. Martínez expressed his own opinion, while the Commission seems to have spoken through Díaz Collazo. In any event, if the Commission at that time intended to expel or exonerate the horse or horses belonging to Arana, upon the evidence adduced in the case of the jockey, without making any further investigation or without a separate trial wherein the owner might be heard, counsel

for Arana should have been notified. The fact that no notice was given points to the conclusion that, so far as the Commission or a majority thereof is concerned, the idea of expelling one of the horses and exonerating the other, without the formality of a hearing, was an afterthought.

Appellant insists that according to section 244 of the Rules adopted by the Insular Racing Commission, construed in connection with section 256, it is not necessary to give notice to the owner when a horse is to be expelled as a result of bad conduct of the jockey, who has already been convicted and deprived of his license.

Said sections read thus:

"Section 244.—Every jockey or trainer, who, in the judgment of the board of judges or of the Insular Racing Commission, may be guilty of making his horse lose through carelessness, negligence or by fraudulent means or through bribing a jockey, or who combines with any other person so that any horse may lose, or who uses any illicit or illegal means, shall be suspended for such time as the board of judges or the Insular Racing Commission may determine, or be disqualified to ride or train any race horse and may be excluded, moreover, from the hippodromes of Porto Rico . . . . Every horse that may have been the object of such acts shall be excluded from the races in all the hippodromes of the island, at the discretion of the board of judges or of the Insular Racing Commission. . . . ."

"Section 256.—The use of injections or the use of drugs or any substance, apparatus or object which may produce enervating or stimulating effects on the horse in order to win or lose a race, except the whip or spurs, is prohibited. The person infringing this section shall be punished by definite expulsion from the hippodromes of Porto Rico, and shall be brought before the courts of justice."

We find nothing in these sections to sustain the conclusion sought to be derived therefrom. But even if they were open to the construction suggested by appellant, the Commission has no power to repeal section 12 or any other specific provision of the law which created it. The expulsion of a horse or the elimination of its name from the studbook is a cancellation to that extent of the owner's license. If an

owner can be deprived of the right to race his horses, without giving him notice or granting him the opportunity of a hearing, then the statute that requires such notice and hearing as a prerequisite to the cancellation of a license would have no effect.

The judgment appealed from must be affirmed.